## WAYE, Etc. *v.* STATE

[No. 262, September Term, 1962.]

*Decided June 4, 1963.*

512

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*William Carruth* for the appellant.

*Jacques E. Leeds, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *George J. Helinski, Assistant State's Attorney,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

Appellant was convicted, by a judge of the Criminal Court of Baltimore, sitting without a jury, of four separate offenses of obtaining money by false pretenses, and sentenced therefor.

The only question involved is, Was there sufficient evidence to support his convictions on all, or any, of the charges?

Although each of the offenses involved the cashing of a worthless check, all of the indictments were based on the Code (1962 Cum. Supp.), Article 27, § 140 (False Pretenses Act), and not upon § 142 (Worthless Check Act). And the surrounding facts and circumstances in three of the cases are so similar that we may set forth the facts on one case, and the conclusion reached therein will necessarily control the other two. The facts in the fourth case are likewise similar, with the exception that the check was drawn for $100.

The appellant presented his personal check in the amount of $85.00, dated May 23, 1962, payable to A. Lloyd Waye and signed A. Lloyd Waye to an employee of Hochschild Kohn & Company, at its place of business, and asked that it be cashed. (The assistant credit manager testified. He had no

personal knowledge of the check's having been cashed, but stated what had transpired from notations on the check.) Waye was asked if he had any identification and he produced his "voter's card." Whereupon and without further ado, he was given $85.00 of the "coin of the realm." And the assistant credit manager testified that it was the "practice" of his company to cash checks "merely upon the showing of a driver's license or a voter's card" ! The State also produced evidence to show that the accused admitted that he had "passed" eleven other checks in the one week period during May of 1962. The twelve checks came back marked "No funds."

Thus, it is seen that we have a prosecution under § 140 (False Pretenses Act), and the evidence offered to sustain the conviction thereunder is a bank check drawn by the traverser and made payable to himself (a check which he undoubtedly knew was worthless), without any misrepresentation of a past or existing fact extrinsic to the check itself. The State acknowledges that under a charge of violating § 140 it must show "there was a representation of a past or existing fact made with intent to defraud, and that the operation of such representation as a deception induced a transfer and the obtaining of the money by the person committing the fraud, to the loss of another." But it earnestly urges that the giving of the worthless check, with knowledge of its worthlessness, in and of itself, constituted a false representation of an existing fact. The defense insists that there must be some representation *aliunde* the worthless check to sustain his conviction under § 140.

The specific acts of making, uttering and delivering a worthless check did not constitute a crime at common law, *State v. Stout*, 95 S. E. 2d 639 (W. Va.), *Williams v. Territory*, 108 P. 243 (Ariz.). The False Pretenses Act (§ 140) was first enacted into law by Chapter 319 of the Laws of 1835. In a prosecution under this law, the burden of proof rests upon the State to establish an intent to defraud by the accused. In such cases, it was frequently difficult to prove actual intent to defraud when property had been obtained by means of a worthless check. By Chapter 281 of the Laws of 1914, the Worth-

less Check Act (§ 142) was enacted. This Act makes the giving of a worthless check, for value, *prima facie* evidence of an intent to cheat and defraud. This Court has held that the two statutes name separate and distinct criminal offenses. *Willis v. State,* 205 Md. 118, 125, 106 A. 2d 85; and even though a worthless check is involved in a fraudulent transaction, the State may prosecute under the False Pretenses Act, *Lyman v. State,* 136 Md. 40, 50, 109 A. 548. Thus it is seen that when the prosecution is under § 142, the mere giving of a worthless check under the circumstances named in the statute raises a presumption of an intent to cheat and defraud. However, if the State elects to proceed under § 140 where a worthless check is involved, it must do so without the aid of any presumption and affirmatively establish an intent by the defendant to cheat and defraud. *Willis v. State, supra; Levy v. State,* 225 Md. 201, 170 A. 2d 216; *Marr v. State,* 227 Md. 510, 177 A. 2d 862.

We noted above that appellant earnestly presses his contention that there must be some false representation outside the worthless check, when the prosecution is under § 140. There is language in the opinions in *Willis, Marr* and *Levy,* all *supra,* that possibly can be construed as lending some support to this contention. However, the gravamen of the offenses described in both §§ 140 and 142 is an intent to cheat and defraud, and the present question posed by the appellant boils down, as we see it, more to a question of the weight of the evidence than to its sufficiency. In the instant case, the trial judge was satisfied with the State's evidence, and found as a fact an intent to cheat and defraud by the accused, as well as the other constituent elements of the offense charged. To support the finding of such intention, he had the check immediately involved and the fact that appellant had "passed" it and eleven others within a period of seven days. And, although there is some division in the different jurisdictions upon the question of the necessity of making a false representation extrinsic to the worthless check (when the prosecution is brought under a general false pretenses act and not under a worthless check act), that the check is good or will be paid, in order to render criminal under a false pretenses act the

obtaining of property by means of such check, the majority view holds that such representations are unnecessary. 22 Am. Jur., *False Pretenses,* § 57; 35 C.J.S., *False Pretenses,* § 21; and annotations in 35 A.L.R. 347 *et seq.,* and 174 A.L.R. 176. The majority view reasons that the giving of a worthless check, or a check which the accused has no reason to believe will be honored, is, in itself, a false pretense: the giving of such a check being a representation or symbol that the accused, or the drawer of the check, has money or credit with the drawee, to the amount of its face value. The evidence, as we outlined it above, was sufficient, we think, to support the trial court's finding of an intent by the appellant to cheat and defraud; certainly we cannot say such a finding was clearly erroneous. *Maryland Rule 886.* To the extent, if at all, the holdings in *Willis, Marr* and *Levy,* all *supra,* are in conflict with the views here expressed, the statements therein are accordingly modified.

In order to determine finally the question of the sufficiency of the evidence, one other aspect relative thereto must be considered. It was noted above that the prosecution is under § 140 (False Pretenses Act) and not under § 142 (Worthless Check Act); the amount of money obtained was less than $100; and this Court has held (prior to 1955) that a prosecution under § 140 was proper even though a worthless check was the basis of the accusation against a defendant. Until 1955, the permissible penalties under the two sections were identical: up to ten years. The title to Chapter 11 of the Laws of 1955 states: "AN ACT to repeal and re-enact, with amendments, Sections [now 142 and 144] of Article 27 of the Annotated Code * * *, title 'Crimes and Punishments,' sub-title 'False Pretenses,' amending the law concerning the obtaining of money, credit, goods or a release with intent to cheat and defraud another, with a 'worthless check,' distinguishing between offenses concerning a value of less than $100.00 and a value of $100.00 or more, and * * *." As amended, § 142, in part, reads: "Every person who * * * shall obtain * * * anything of value, of the value of one hundred dollars or more, by means of a * * * [worthless] negotiable instrument * * *

shall [upon conviction] be fined or imprisoned, or both, as provided in § 140 * * *. Where the value of [the property obtained] * * * is less than one hundred dollars, such person, upon conviction, shall be * * * fined not more than fifty dollars or imprisoned for not more than eighteen months * * *, or both * * *."

An analysis of this situation shows that it presents problems. Did the amendment of § 142 amend, by implication, § 140 to the extent that when a worthless check is involved and the value of the property obtained is less than $100, then the prosecution must be under § 142 and not under § 140? Did the Legislature intend to limit the penalty under the above circumstances if the prosecution be brought under § 142, but permit the higher penalty (up to ten years, and contrary to the above-quoted provisions of § 142), if, under identical facts, the prosecution be brought under § 140? These questions must be answered in deciding the case.

Repeals by implication are not favored. The amendment of § 142, in 1955, did not, we think, amend by implication § 140 to the extent that if a worthless check be involved and the property obtained be valued at less than $100, the prosecution is limited to § 142. We, therefore, hold that under such circumstances the prosecution may, as heretofore, be brought under either section. However, we do not believe that the Legislature intended to create such an anomalous and incongruous situation as to limit the penalty, when a worthless check and property valued at less than $100 are involved, to $50 and eighteen months' confinement when the prosecution is under § 142, but to permit a much higher and more severe penalty under identical facts simply because someone decides to bring the prosecution under § 140. We, therefore (without considering possible constitutional aspects that a contrary ruling might produce), hold that the amendment of § 142 in 1955 amended, or modified, § 140 to the extent that when there is a conviction under § 140 for the giving of a worthless check and the property obtained is valued at less than $100, the maximum penalty that may be imposed is a fine of $50 and eighteen months' imprisonment. Compare Chapter 616 of the Acts of 1961, Section 109 (13).

The above means that the convictions in these cases where the property obtained was less than $100 in each case will be sustained, but the cases will be remanded without affirmance or reversal, so that proper sentences may be imposed (said sentences to be whatever the trial judge deems meet and proper, not, however, to exceed a $50 fine and eighteen months' imprisonment).

The facts in the fourth case were almost identical, except the money obtained was $100. As stated above, when the value of the property obtained is $100, or more, the permissible sentences under §§ 140 and 142 are the same; hence the judgment in this case will be affirmed.

> *Judgment under Indictment 3018 affirmed. Judgments under Indictments 3016, 3017, and 3019 are neither affirmed nor reversed, but cases are remanded for the imposition of proper sentences in accordance with this opinion.*